UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                         **DECISION AND ORDER**
v.                                        13-CR-211

JAMES MAZZARIELLO, JR., and
ADAM MAZZARIELLO,

                            Defendants.

## INTRODUCTION

Before the Court is defendants James Mazzariello, Jr. and Adam Mazzariello's motion to dismiss all counts of the Superseding Indictment.  For the following reasons, defendants' motion to dismiss the Superseding Indictment is denied in its entirety.

## RELEVANT FACTS AND BACKGROUND

On October 2, 2013, an Indictment was filed charging James Mazzariello, Jr., Adam Mazzariello and Christopher Mahoney with one count of conspiracy to pay bribes (in violation of 18 U.S.C. §371) from March 2008 through May 2012 and charging James Mazzariello, Jr. with two counts of making and subscribing a false tax return (in violation of 18 U.S.C. §7206(1)) in March 2010 and July 2011. (Dkt. No. 1) The Indictment alleges, *inter alia*, that James Mazzariello, Jr. was the owner and operator of Jim Mazz Automotive Inc. and National Towing and Storage Inc. (collectively referred to as "Jim Mazz Auto").  Jim Mazz Auto was

involved in all aspects of vehicle towing and repair, and operated a collision shop that repaired automobiles, provided towing services, and sold used cars.  Adam Mazzariello, son of James Mazzariello, Jr., was the supervisor responsible for the towing aspect of the business, and Christopher Mahoney was employed by the business in a managerial capacity.

By way of background, the Indictment alleges that Jim Mazz Auto generated significant income from towing and storing vehicles damaged in accidents in the City of Buffalo, as well as from the work involved in repairing those vehicles.  Therefore, it was advantageous for tow truck operators employed by Jim Mazz Auto to arrive first at motor vehicle accident scenes in order to secure the business of towing and repairing the vehicle or vehicles involved.  The Indictment further alleges that the City of Buffalo Police Department had a policy indicating that officers were not to "recommend nor summon any private tow trucks or take any action that would directly or indirectly connect [the] Department with the services of any privately owned tow truck."  Contrary to that policy, certain City of Buffalo police officers would direct and authorize the services of Jim Mazz Auto tow truck operators at accident scenes in exchange for cash payments.

With respect to the bribery conspiracy charge, it is alleged that between March 2008 and May 2012 James Mazzariello, Jr., Adam Mazzariello and Christopher Mahoney offered sums of money to City of Buffalo Police Radio

Dispatch operators in order to receive advance notice of motor vehicle accidents, made cash payments to certain officers, directed or caused tow truck operators to make cash payments to officers, and reimbursed tow truck operators for cash payments made to officers.  The tax counts, charged against James Mazzariello, Jr. only, involve allegations that he knowingly submitted tax returns that reported gross income and receipts for Jim Mazz Auto that were far lower than the gross receipts actually generated by the business for tax years 2009 and 2010.

The matter was referred to Magistrate Judge Hugh B. Scott for supervision of all pretrial proceedings.  In early October of 2013, after receiving information that attorney Steven Cohen ("Cohen") intended to appear for defendant James Mazzariello, Jr. and Adam Mazzariello, the Government filed a motion for determination of a conflict of interest.  The basis of the Government's motion was that Cohen had intermittently represented each named defendant in the matter, along with several uncharged co-conspirators during the pre-indictment investigation.  Magistrate Judge Scott held *Curcio* hearings to address the conflict issue, during which each defendant was appointed independent counsel.  On January 3, 2014, Magistrate Judge Scott denied the Government's motion to disqualify Cohen from the case.  Magistrate Judge Scott found, *inter alia*, that each defendant made knowing and voluntary waivers of the potential conflicts.[1]

---

[1] The Government also moved to disqualify Cohen on the basis that he was likely to be a fact witness at trial.  On November 26, 2013, Magistrate Judge Scott issued an Order denying this portion of the Government's motion.  (Dkt. No. 23)

3

(Dkt. No. 25)

Following resolution of these issues, the matter continued to proceed

before Magistrate Judge Scott.  A Superseding Indictment was filed on April 23,

2014.  (Dkt. No. 40)[2]  On July 8, 2014, defendant Mahoney entered into a plea

agreement, before this Court, wherein he pled guilty to Count 1 of the

Superseding Indictment (conspiracy to pay bribes).  (Dkt. No. 48)  Following

defendant Mahoney's plea, pretrial motion practice continued as to the

Mazzariello defendants.  On December 11, 2014, the Government filed a motion

*in limine*, before this Court, seeking to, *inter alia*, preclude the Mazzariello

defendants from raising a defense of economic duress or coercion at trial with

respect to the bribery charge.  (Dkt. No. 70)  Oral argument was held on February

3, 2015.  At that time, this Court raised, *sua sponte*, the issue of whether

Mahoney's change of plea and agreement to cooperate with the Government

presented a change of circumstances such that the potential conflicts of interest

issues needed to be revisited.  Following extensive Court-ordered briefing by the

parties and oral arguments, this Court issued an Order stating that an initial

inquiry hearing was necessary to determine whether an actual or potential

unwaiveable conflict or conflicts of interest existed as a result of Cohen's prior

representation of defendant Mahoney given the fact that Mahoney is now a

---

[2]  The Superseding Indictment contains an additional count of making and
subscribing a false tax return against defendant James Mazzariello, Jr.

4

Government witness.  (Dkt. No. 93)  The initial inquiry hearing took place before this Court on May 28, 2015.  The parties submitted post-hearing briefs, and this Court heard oral argument on September 1, 2015.  At that time, the Court considered the matter submitted.

On November 3, 2015, defense counsel for the Mazzariellos requested that the Court hold its determination as to the motion to remove counsel in abeyance in order to allow defendants to file a motion to dismiss the Superseding Indictment.  (Dkt. 113)  After this Court granted two extensions of time to defendants, the instant motion to dismiss the Superseding Indictment was filed on November 19, 2015.[3]  The Government filed a response on December 7, 2015 and defendants filed a reply on December 15, 2015.  After reviewing the extensive submissions by defendants, the Government's response in opposition and defendants' reply, the Court determined that oral argument was not necessary.

---

[3] In support of the motion to dismiss, defendants submitted a 26-page memorandum of law, a 29-page declaration by attorney Steven Cohen, with 35 exhibits which included, among other things, letters from defendants' attorneys addressing payments of bribes by tow truck operators to City of Buffalo police, amended tax returns, excepts from grand jury transcripts, 13 affidavits or letters from current or former Jim Mazz employees, court documents from a civil suit filed by defendants against the City of Buffalo, and an affidavit by defendant James Mazzariello, Jr.  While the Court has thoroughly reviewed the extremely lengthy submissions by defendants in support of their motion to dismiss, the Court notes that a large number of these documents would likely be inadmissible in a criminal trial because they would be irrelevant, would constitute hearsay or would otherwise violate the Federal Rules of Evidence.

**DISCUSSION**

Defendants move to dismiss the Superseding Indictment on the grounds that they are the victims of selective and vindictive prosecution, and because the Superseding Indictment fails to state an offense.  As explained in detail below, defendants' arguments in favor of dismissal are without merit, and are rejected by this Court in their entirety.

*Selective Prosecution*

The Second Circuit has held that "the decision as to whether to prosecute generally rests within the broad discretion of the prosecutor."  *United States v. White*, 972 F.2d 632, 639 (2d Cir. 1999); *see also United States v. White*, 972 F.2d 16, 18 (2d Cir. 1992) (a prosecutor's pretrial charging decision is presumed legitimate).  However, this discretion is subject to "constitutional standards" and "cannot be based upon unjustifiable considerations such as race, religion, or other arbitrary classification."  *United States v. Batchelder*, 442 U.S. 114 (1979); *accord United States v. Armstrong*, 517 U.S. 456 (1996).  To support a claim of selective or discriminatory prosecution, a defendant bears the burden of establishing a *prima facie* case that, (1) while others similarly situated have not generally been proceeded against because of the conduct forming the basis of the charge against him, the defendant has been singled out for prosecution; and (2) that the government's discriminatory selection of him for prosecution has been in bad faith, based upon impermissible considerations such as race, religion, or

6

the desire to prevent the defendant's exercise of constitutional rights.  *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974); *see also Armstrong*, 517 U.S. at 465 (a defendant must demonstrate by clear evidence that the decision to prosecute "had a discriminatory effect and that it was motivated by a discriminatory purpose").  Indeed, a defendant challenging the government's decision to prosecute him bears a "demanding burden."  *Id*.

Here, defendants have wholly failed to establish a claim of selective prosecution.  To begin, defendants have not put forth any tangible or credible evidence that they were singled out for prosecution while other similarly situated individuals have not been prosecuted for the same behavior or conduct.  Instead, defendants make generalized and conclusory arguments that City of Buffalo police officers were regularly giving preference to certain tow truck companies whose drivers paid or bribed them.  In support of this argument, defendants submit two affidavits from Jim Mazz employees containing statements which infer that because other towing companies, such as Hauck's Collision, were treated more favorably by the police at accident scenes, these individuals must have been paying officers in exchange for tows or had some "private arrangement" with the police.  Notably absent from defendants' papers is any concrete demonstration that other individuals were actually bribing members of the City of Buffalo Police Department.  Instead, defendants rely on their own unsupported accusations and self-serving averments that others were the true wrong-doers

and that a number of City of Buffalo police officers regularly accepted bribes. These allegations are simply insufficient to meet the high standard employed when analyzing claims of selective prosecution.  *See Armstrong*, 517 U.S. at 470 (affidavit "recount[ing] hearsay and report[ing] personal conclusions based upon anecdotal evidence" are not sufficient to justify discovery in a selective prosecution claim); *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992) ("Mere assertions and generalized proffers on information and belief are insufficient."); *United States v. Berrios*, 501 F.2d 1207, 1211 (affidavit from defendant and attorney that they "beleive[d] there was improper motive and that 'hundreds' of similarly situated individuals went unprosecuted was insufficient").

Further, even if defendants could demonstrate that they have been singled out for prosecution, which they have not, their claim of selective prosecution still fails because they cannot show that the prosecution was for a constitutionally impermissible reason.  In a selective prosecution claim, a criminal action is brought in bad faith when it is based upon such impermissible considerations as race, religion, or the desire to prevent the defendant's exercise of constitutional rights.  Defendants do not allege that they have been singled out for prosecution based upon their membership in a protected class.  Instead, defendants claim that they have been singled out for prosecution because they attempted to stop corruption within the towing business in the City of Buffalo, and that they regularly complained to city officials regarding the practice of certain police officers to

8

accept bribes from tow truck operators in exchange for the exclusive right to tow vehicles from accident scenes.  Even though defendants fail to specifically indicate the constitutional right they were attempting to exercise, the Court interprets their argument as a claim that they were prosecuted for exercising their first amendment right to complain about the conduct of Government officials or to petition the Government for the redress of their grievances.

Assuming that defendants did attempt to end the practice of tow truck operators paying police officers in order to tow vehicles from accident scenes, there is no evidence whatsoever to suggest that this is the reason why defendants were indicted for conspiracy to commit bribery and tax fraud. Defendants point to instances where they met with City of Buffalo police officers, supervisors and officials, or agents from the Federal Bureau of Investigation, in order to end the "shakedown" of tow truck drivers by police officers.  However, there is nothing at all in the record to indicate that these meetings were in any way related to, or the cause of, the decision to prosecute defendants.  In *United States v. Anderson*, the District of Connecticut rejected defendant's claim of selective prosecution because defendant "offered no evidence that he was selected for prosecution in order to penalize the exercise of his First Amendment rights."  637 F. Supp. 1106 (D. Conn. 1986).  Defendant argued that he was selectively prosecuted, in part, because of his reputation as a "tax protester".  The district court found that while defendant, during conversations with the FBI, did

9

offer his views on the constitutionality and voluntariness of the federal income tax,

"it was mere speculation to suggest that defendant was prosecuted as a result of

his comments to the special agent."  *Id*. at 1108.  Likewise here, the fact that

defendants may have complained about the behavior they are charged with

engaging in does not, in and of itself, demonstrate that they were selectively or

unfairly prosecuted on this basis.  There is nothing in the record to link or connect

defendants' complaints and the United States Attorney's decision to seek

indictment for the instant crimes.  Defendants are charged with conspiracy to

commit bribery.  Indeed, the fact that defendants complained about police officers

accepting bribes, or other individuals paying bribes, does not mean, in light of the

grand jury's finding of probable cause, that they cannot be prosecuted for this

same conduct.  *See Bordenkircher v. Hayes*, 434 U.S. 357 (1978) ("[S]o long as

the prosecutor has probable cause to believe that the accused committed an

offense defined by statute, the decision whether or not to prosecute, and what

charge to file or bring before a grand jury, generally rests entirely in his

discretion.")

   *Vindictive Prosecution*

   In order to succeed on a claim of vindictive prosecution, a defendant must

show that "(1) the prosecutor harbored genuine animus toward defendant, or was

prevailed upon to bring the charges by another with animus such that the

prosecutor could be considered a 'stalking horse', and (2) [the defendant] would

not have been prosecuted except for the animus." *United States v. Koh*, 199

F.3d 632, 640 (2d Cir. 1999) (internal citations omitted).  Here, in an attempt to

show animus, defendants contend that the Government "pressured witnesses to

testify against defendants" and used "*Kovel* accountant Stevanoff" to provide

testimony during grand jury proceedings.  Neither argument supports defendants'

claims.

Witness affidavits provided by defendants describe, for the most part,

standard questioning by law enforcement officials that in no manner indicate

undue pressure or influence on the part of the Government.  One statement,

which is unsigned and unsworn, recounts that an FBI agent asked a witness to lie

and another indicates that an agent "yelled at and screamed at" a witness during

his interview.  These statements, even if accepted as true, fail to demonstrate

that the Government acted with animus, or that the prosecution was brought to

punish defendants or to retaliate against them for exercising their rights.  *See*

*United States v. Sanders*, 211 F.3d 711 (2d Cir. 2000) (in the context of a

vindictive prosecution claim, the government must show "some evidence" of

"genuine animus", not the mere possibility that animus might exist under the

circumstances); *United States v. Stewart*, 590 F.3d 123 (2d Cir. 2009) (prohibited

animus occurs where "a prosecutor's charging decision is a direct and

unjustifiable penalty that resulted solely from the defendant's exercise of a

protected right.")

Moreover, defendants' claim that the Government's use of Peter Stevanoff to provide grand jury testimony was improper is completely without merit.  Peter Stevanoff is a certified public accountant who performed tax work for defendant James Mazzariello and Jim Mazz Auto prior to and during the time period of the Superseding Indictment.  The Government subpoenaed Stevanoff to testify before the grand jury in this matter, and defendants repeatedly moved to quash the subpoena on the basis that Stevanoff had been retained by defendants' attorneys for purposes of litigation.[4]  On *three separate occasions*, this Court denied defendants' motions to quash grand jury subpoenas of Peter Stevenoff.  Each time, this Court rejected defendants' arguments that Stevanoff had been retained for the purposes of litigation.  The Court relied, in substantial part, on Stevanoff's own descriptions, during his grand jury testimony, of the services he provided to defendants.  In their motion to dismiss, defendants state that "Peter Stevanoff was pressured by the United States Attorney's Office to lie under oath to the point that the Grand Jury though he was not a KOVAL accountant."  This statement, which the Court rejects in its entirety, is completely speculative, wholly conclusory and totally unsupported by any actual evidence in the record.

---

[4]  Defendants refer to Stevanoff as a *Kovel* accountant because *United States v. Kovel* stands for the proposition that, in certain circumstances, communications between a client, attorney and accountant for purposes of litigation are subject to attorney-client confidentiality.  296 F.2d 918 (2d Cir. 1961)

*Failure to State a Claim*

Finally, defendants argue that the Superseding Indictment must be dismissed because it fails to state an offense.  An indictment is sufficient if it "first contains the elements of the offense charged and fairly informs a defendant of the charges against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998).  Here, defendants are not claiming that the Superseding Indictment itself is insufficient, but rather have submitted a litany of legal and factual arguments as to why they are not guilty of the charges.  In short, defendants claim that they never paid a bribe to City of Buffalo police officers or authorized the payment of bribes by their employees, that they actively attempted to stop the practice of paying bribes with regard to both their own employees and other tow truck companies, and that any reimbursement to their tow truck operators for payments to police officers was authorized by former co-defendant Christopher Mahoney only.  As to the tax charges, defendant James Mazzariello, Jr. contends that Mahoney handled all money and bookkeeping for the business without any oversight, that he believed that all records kept by Mahoney as to income were accurate, and that he never intended to file a false tax return.  Defendants' arguments in this regard, which relate to the sufficiency of the evidence, the elements of the charges, the credibility of the witnesses, and potential affirmative defenses, are exclusively

13

issues for trial and are not appropriately raised on a motion to dismiss.  *See Alfonso*, 143 F.3d at 777 ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss the indictment."); *United States v. Ramos*, 2013 WL 1932110 (SDNY 2013) ("there is no summary judgment procedure in criminal cases").[5]

<u>Sealing of the Motion</u>

Defendants have moved to file the instant motion under seal because it contains references to and excerpts from grand jury transcripts.  The Government does not oppose defendants' request.  A "presumption of immediate public access attaches [to judicial documents] under both the common law and the First Amendment." *Lugosch v. Pyramid Co. Of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).  However, grand jury transcripts are subject to a presumption of secrecy. *Hartford Courant Company v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004).  In order to balance these competing interests, defendants are instructed to publically file the motion to dismiss with all references to or excerpts of grand jury testimony redacted.

---

[5] The Second Circuit has held that, in the rare circumstances in which the government "has made what can fairly be described as a full proffer of the evidence it intends to present at trial," the court may appropriately address "the sufficiency of the evidence...on a pretrial motion to dismiss the indictment." *Alfonso*, 143 F.3d at 776-77. That is not the case here, where the Court has not been made aware of the majority of the evidence the Government intends to introduce at trial.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Superseding Indictment is denied in its entirety.


SO ORDERED.


      _s/ Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   December 17, 2015